UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| FRANCHESCA O'NEAL, | ) |
| Plaintiff, | ) |
| VS. | ) Civil Action No. SA-08-CA-744-XR |
| CHARLES FALCON, | ) |
| Defendant. | ) |

**ORDER**

On this date, the Court considered Defendant Charles Falcon's Motion for Summary Judgment (docket no. 44). After careful consideration, the Court grants the motion.

**I. Background**

On July 1, 2008, Plaintiff filed an original petition in state court, alleging that she was a student at San Antonio College, which is part of the Alamo Community College District, studying political science. Plaintiff alleged that Defendant is a professor in the speech department, and that he allegedly made false and malicious statements about Plaintiff during a class.

In response to special exceptions filed by the Defendant, Plaintiff filed an amended petition on August 22. Therein, she listed the following claims: "deprivation of property under the United States Constitution's Fourteenth Amendment, deprivation of liberty under the United States Constitution's Fourteenth Amendment, defamation under 42 U.S.C.S. section 1983, deprivation of First Amendment right to free speech under 42 U.S.C.S. section 1983, [and] liability for intentional infliction of emotional distress under Texas law."

1

With regard to her Fourteenth Amendment deprivation of property claim, Plaintiff alleged that she had "a legitimate claim to my 'A' where the defendant did awarded a B minus for my first speech and the course." She further alleged that Defendant Falcon deprived her of her property interest by awarding a B minus rather than the A+ she earned. She alleged that Defendant denied her due process by refusing to amend "his egregious demerits." The Court dismissed this claim in its Order dated January 12, 2009 (docket no. 25).

With regard to her deprivation of liberty claim, Plaintiff alleged that Falcon's defamatory comments in class ruined her reputation with those students and with faculty. Plaintiff alleged that Falcon's false statements "damaged the value of [her] good name" and that her lower GPA forecloses educational and occupational opportunities. Plaintiff asserted that she had a "clearly established liberty interest in the way of my reputation and good name" and that her grade point average "is an indisputable liberty interest with respect to my good name."

With respect to her defamation claim under section 1983, Plaintiff alleged that Falcon is liable under section 1983 for defamation "for publishing false, defamatory statements with regard to competence in the way of my chosen occupation as a student." In her First Amendment claim, Plaintiff alleged that she had requested the topic of abortion for her speech, but "abortion was the only topic off limits" and "there was no legitimate reason for its prohibition." Plaintiff alleged that she questioned Falcon about his banning the topic of abortion, and that Falcon retaliated against her "for exposing him as incapable of communicating a reasonable explanation to the class regarding his prohibition of the discussion of abortion." Plaintiff alleged that Falcon had no right to ban "other consenting adults" from discussing abortion, and that his actions deprived her of her free speech rights and due process, and that he acted in violation of his classroom rules and possibly Penal Code

section 42.05.[1]

Plaintiff further asserted a state-law tort claim for intentional infliction of emotional distress. Plaintiff again alleged that Falcon "lost face" when she questioned him about his prohibition on the discussion of religion and he blamed Plaintiff, so he set Plaintiff up "to take the fall." Plaintiff alleged that Falcon withheld specifications and helped her develop her outline to make sure that she made mistakes and would fail. Thus, Plaintiff alleged, she failed "because that was how [Falcon] wanted to 'legitimately' reclaim his power." Plaintiff alleged that she suffered emotional distress and could not continue classes.

On May 8, 2009, the Court issued an Order on Defendant's motion for judgment on the pleadings (docket no. 31). Therein, the Court dismissed Plaintiff's deprivation of liberty claim under the Fourteenth Amendment and the related defamation claim, as well as the intentional infliction of emotional distress claim. Plaintiff's First Amendment claims, however, remained pending, including specifically: (1) Plaintiff's claim that her First Amendment free speech rights were violated by Professor Falcon's prohibiting her from speaking on the topic of abortion; and (2) Plaintiff's claim that her First Amendment rights were violated when Professor Falcon allegedly retaliated against her for questioning him in class about the prohibition. Defendant Falcon now moves for summary judgment on these claims.

## II. Standard of Review

Summary Judgment is appropriate if the pleadings, the discovery and disclosure materials

---

[1] 42.05. Disrupting Meeting or Procession: (a) A person commits an offense if, with intent to prevent or disrupt a lawful meeting, procession, or gathering, he obstructs or interferes with the meeting, procession, or gathering by physical action or verbal utterance.

3

on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56.

### III. Analysis

**A. First Amendment claims**

As the Court noted in its prior Order, Plaintiff's First Amendment claim appears to have two aspects. First, Plaintiff complains that she and the class were not permitted to choose abortion as a topic for their public speaking assignment. Second, Plaintiff is claiming retaliation. *See, e.g.*, Amended Complaint at 26 ("The defendant acted against me in retaliation for exposing him as incapable of communicating a reasonable explanation to the class regarding his prohibition of the discussion of abortion."). Specifically, Plaintiff alleges that she questioned Defendant in class about the prohibition, and in doing so exposed "his inability to communicate a reasonable explanation" for the prohibition, leading him to "avenge his exposed inadequacy and subsequent embarrassment" by undermining Plaintiff's credibility. Plaintiff alleges that Defendant undermined her credibility by pre-determining her grade for the first speech, ensuring that she would fail when it came time to deliver her speech, and unfairly criticizing her in front of the class.

<u>1. Deprivation of right to speak on abortion</u>

In *Hazelwood School District v. Kuhlmeier*, 484 U.S. 260 (1988), the Supreme Court found no constitutional violation by a school's content restriction of a student newspaper published as part of a journalism class for a grade, holding that "educators do not offend the First Amendment by exercising editorial control over the style and content of student speech in school-sponsored expressive activities so long as their actions are reasonably related to legitimate pedagogical concerns." The Court noted that "[a] number of lower federal courts have similarly recognized that

4

educators' decisions with regard to the content of school-sponsored newspapers, dramatic productions, and other expressive activities are entitled to substantial deference," but left open the question whether "the same degree of deference is appropriate with respect to school-sponsored expressive activities at the college and university level." *Id.* at 273 n.7.

In *Settle v. Dickson County Sch. Bd.*, 53 F.3d 152 (6th Cir. 1995), a junior high school student asserted that her right to free speech was violated when her teacher refused to allow her to write a research paper on Jesus and assigned her a grade of zero when she refused to write on a different topic. The teacher assigned the research paper so that students would "learn how to research a topic, synthesize the information they gathered, and write a paper using that information." *Id.* at 153. Students could choose their own topic, subject to teacher approval. *Id.* Plaintiff requested the topic of Jesus's life, which was not approved. The teacher gave a number of reasons during discovery for disallowing the topic, including that she believed that it would be difficult for her to evaluate a research paper on a topic related to Jesus, she knew that plaintiff had a strong personal belief in Christianity that would make it difficult for her to write a dispassionate research paper, she believed that the paper would be difficult to grade because plaintiff might take any criticisms of the paper too personally, because plaintiff knew a lot about Jesus Christ, she could produce an outline without doing any significant research, and that she "just knew that we don't deal with personal religion-personal religious beliefs. It's just not an appropriate thing to do in a public school ... People don't send their children to school for a teacher to get in a dialogue with personal religio[us] beliefs. They send them to learn to read and write and think. And you can do that without getting into personal religion." *Id.* at 154. The district court, relying on *Hazelwood*, granted summary judgment for defendants. On appeal, the Sixth Circuit affirmed. It noted:

5

> After reviewing the precedents concerning students' rights of free speech within a public school, we find few cases that address the conflict between the student's rights of speech in the classroom and a teacher's responsibility to encourage decorum and scholarship, including her authority to determine course content, the selection of books, the topic of papers, the grades of students and similar questions. Students do not lose entirely their right to express themselves as individuals in the classroom, but federal courts should exercise particular restraint in classroom conflicts between student and teacher over matters falling within the ordinary authority of the teacher over curriculum and course content. "Courts do not and cannot intervene in the resolution of conflicts which arise in the daily operation of school systems and which do not directly and sharply implicate basic constitutional values." *Epperson v. Arkansas*, 393 U.S. 97, 104, 89 S.Ct. 266, 270, 21 L.Ed.2d 228 (1968).

*Id.* at 155. It continued, "The free speech rights of students in the classroom must be limited because effective education depends not only on controlling boisterous conduct, but also on maintaining the focus of the class on the assignment in question." *Id.* Thus, "[w]here learning is the focus, as in the classroom, student speech may be even more circumscribed than in the school newspaper or other open forum. So long as the teacher limits speech or grades speech in the classroom in the name of learning and not as a pretext for punishing the student for her race, gender, economic class, religion or political persuasion, the federal courts should not interfere." *Id.*

The Court further concluded that *Tinker v. Des Moines Independent Community School Dist.*, 393 U.S. 503 (1969), supported its conclusion that teachers have broad discretion in limiting speech when they are engaged in administering the curriculum because, though the Court held that a student could wear a black armband to protest the Vietnam War, it also stated that a school could limit otherwise protected speech if it did so as part of a "prescribed classroom exercise." The Sixth Circuit recently affirmed this approach in *Curry ex rel Curry v. Hensiner*, 513 F.3d 570, 577-78 (6th Cir. 2008), holding that "[e]xpressive activities made as part of the school curriculum call for a *Hazelwood* analysis" and under that analysis a restriction of a student's expression is constitutionally

6

permissible if it was "reasonably related to legitimate pedagogical concerns."

In *Brown v. Li*, 308 F.3d 939 (9th Cir. 2002), the Ninth Circuit applied *Hazelwood* to the university setting. The court considered whether the University defendants violated the student's First Amendment rights when they refused to approve a "Disacknowledgements" section in his master's thesis. While it found no precedent on point, the court concluded that "a review of the cases discussing the relationship between students' free speech rights and schools' power to regulate the content of curriculum demonstrates that educators can, consistent with the First Amendment, restrict student speech provided that the limitation is reasonably related to a legitimate pedagogical purpose." *Id.* at 947. The court noted that "the parties have not identified, nor have we found, any Supreme Court case discussing the appropriate standard for reviewing a university's regulation of students' curricular speech" and it was "thus an open question whether *Hazelwood* articulates the standard for reviewing a university's assessment of a student's academic work." *Id.* at 949. The court concluded that it did, because the Supreme Court "has suggested that core curricular speech--that which is an integral part of the classroom-teaching function of an educational institution--differs from students' extracurricular speech and that a public educational institution retains discretion to prescribe its curriculum." *Id.* at 950.

In *Axson-Flynn v. Johnson*, 356 F.3d 1277 (10th Cir. 2004), the Tenth Circuit held "that the *Hazelwood* framework is applicable in a university setting for speech that occurs in a classroom as part of a class curriculum." *Id.* at 1289. As noted in its previous order, this Court likewise concludes that the *Hazelwood* framework applies in this case. Under that standard, a court will uphold the defendant's decision to restrict speech as long as the decision was "reasonably related to legitimate pedagogical concerns" and will give "substantial deference" to "educators' stated

7

pedagogical concerns." *Id.* at 1290.

Plaintiff complains that her right to free speech was restricted insofar as Professor Falcon would not let any student choose the topic of abortion for a persuasive speech in his speech communication class. Her Complaint alleges that at the beginning of the class, she "asked the defendant if we could discuss abortion in the context of how it relates to the death penalty." She alleges that "[t]he defendant refused on the grounds that everybody already knew what they thought about the issue, he was pro-choice, and I was not going to change his mind on his pro-choice position." Further, she alleges that, "[n]otwithstanding a genuine interest conveyed by several students in discussing abortion, neither indication that doing so would engender material that would interfere with school activities, nor any violations of a student, or teacher rights, the defendant's proclamation was that abortion was the only topic off limits" while "anything else" was "up for discussion." Plaintiff further asserts that "as an issue of public concern, that posed no risk of interfering with school activities, or violating student/teacher rights, there was no legitimate reason for its prohibition."

Defendant moves for summary judgment, arguing that legitimate pedagogical concerns justified Falcon's refusal to allow students to speak on the topic of abortion for their speech assignment.[2]

---

[2] Defendant's motion includes numerous exhibits, including: (A) Plaintiff's Original Complaint in 08-cv-1031-XR (O'Neal v. ACCD); (B) Plaintiff's Second Amendment of Statement of Claim in state court; (C) ACCD's Original Petition and Request for TRO in state-court proceeding, ACCD v. O'Neal; (D) news headline summary regarding TRO and an interview of O'Neal on KABB-TV; (E) news story concerning TRO and O'Neal from KSAT.com; (F) TRO entered against O'Neal in state-court proceedings ACCD v. O'Neal; (G) reporter's record of temporary injunction hearing in state court proceedings ACCD v. O'Neal; (H) temporary injunction issued in state-court proceedings; (I) deposition excerpts from O'Neal's deposition in ACCD v. O'Neal; (J) summary judgment granting permanent injunction against O'Neal in state-court

"It is only when the decision to censor ... student expression has no valid educational purpose that the First Amendment is so directly and sharply implicated as to require judicial intervention to protect students' constitutional rights." *Hazelwood*, 484 U.S. at 273. *Hazelwood* does not require us to balance the gravity of the school's educational purpose against a student's First Amendment right to free speech, only that the educational purpose behind the speech suppression be valid. *Curry*, 513 F.3d at 579. Falcon offers the affidavit of Jeffrey Hunt, another professor and chair of the Speech and Theatre Department, who states that "certain topics can be so controversial that they can interfere with the students' ability to focus on the mechanics of the speech by distracting attention from the goals of the lesson and focusing it on the topic rather than on how to improve the ability to communicate." Hunt further states, "Based on my experience, abortion is one of those topics which I believe would substantially interfere with the work of the college in training students to present speeches effectively and would be disruptive and in impingement on the rights of other students to receive the best classroom training possible." Hunt states that allowing abortion as a speech topic would have significantly undermined the goal of the speech to train students in speech

---

proceedings ACCD v. O'Neal; (K) affidavit of Jeffrey Hunt, a tenured instructor at ACCD and chair of the Speech and Theatre Department; (L) affidavit of Ben Peña (custodian of records); (M) order regarding nonsuit of attorney's fees claim by ACCD in state-court proceedings ACCD v. O'Neal; (N) Wichita police department criminal records concerning Plaintiff; (O) affidavit of Jessica Howard, Ph.D.; (P) San Antonio College Student Handbook. Plaintiff moves the Court to strike Exhibits C, D, E, F, G, H, I, J, M, and N as irrelevant and unduly prejudicial. The Court has reviewed the exhibits and agrees that they are irrelevant to the legal and factual issues presented in the motion for summary judgment. Accordingly, the Court sustains these objections and does not consider these exhibits. Plaintiff also moves to strike Exhibit O, the affidavit of Jessica Howard, on the basis that this item "has nothing to contribute to the case." Howard's affidavit is the custodian of records affidavit for the student handbook, exhibit P, and thus is admissible for that purpose. However, the Court agrees that the remainder of the affidavit, which deals with the decision to expel Plaintiff, is irrelevant to the issues presented in the motion, and does not consider those portions of the affidavit. The Court will address Plaintiff's objections to Exhibit K in its analysis.

communication, including having the professors and other students critique other students.

Plaintiff objects to Hunt's affidavit on several grounds, but also requests that the Court consider the affidavit insofar as Hunt states reasons for excluding the topic of abortion, which Plaintiff asserts demonstrates that the basis for the exclusion was not legitimate and was a violation of her First Amendment rights.

Plaintiff objects to the affidavit on the basis of lack of personal knowledge and lack of relevance. Specifically, Plaintiff challenges Hunt's statements that abortion is one of those topics that he believes would substantially interfere with the work of the college in teaching students to present speeches effectively and would be disruptive on the basis that he lacks personal knowledge that Falcon spoke of more potentially disruptive topics in class (the kidnapping, sexual assault, and murder of a child), and that no disturbances resulted. This argument is misplaced, however. The fact that Hunt lacked knowledge of other events in the classroom does not demonstrate a lack of personal knowledge of the topics in his affidavit. Rather, Hunt explains that, based on his personal experience, abortion is one of those topics that is disruptive to the goal of the teaching assignment, and that he and Falcon had discussed this, that Falcon shared his views, and that they had made this topic unavailable to students in speech classes for the past several years. Thus, his statements are based on his personal knowledge.

It appears to the Court that Plaintiff's real argument is that Defendant's assertion that abortion is disruptive is untrue and thus invalid, given that another potentially disruptive topic had been discussed in Falcon's class, and did not cause disruption. However, the fact that other topics that are also potentially disruptive are discussed in class, even if they did not end up being disruptive in fact, does not mean that abortion is not a potentially disruptive topic. It seems undisputable that

abortion is a heated topic on which people have strong personal opinions, and that Falcon had a legitimate concern that permitting speeches on this topic would be disruptive and would improperly shift the focus of the lesson to the topic of abortion rather than to communication skills. The fact that perhaps not all potentially disruptive topics are banned does not mean that banning this particular topic is not legitimate. It is not the place of this Court to evaluate whether Falcon and/or ACCD made the best decision in banning the topic of abortion; it may only determine whether they have advanced a valid pedagogical reason, and they have. *Curry*, 513 F.3d at 579 ("[W]we are not called upon to evaluate whether the principal made the *best* decision in disallowing the card. '[A] federal court is obviously not the ideal body to try to answer such a question.'" *quoting Poling v. Murphy*, 872 F.2d 757, 761 (6th Cir. 1989)).

Plaintiff relies on *Tinker* and other cases concerning speech made outside the curriculum to argue that her First Amendment rights were violated because Defendants cannot show that the expression would materially and substantially interfere with the operation of the school. However, as noted, different standards apply to speech made as part of the curriculum. It is undisputed that Plaintiff's speech was part of her class assignment, and thus the *Hazelwood* standard requires only that Defendant demonstrate a legitimate pedagogical concern for restricting the speech. The Court concludes that Defendant has done so, and that Plaintiff has failed to raise a material fact issue such that summary judgment is appropriate.[3]

2. Free speech – retaliation

To establish a prima facie First Amendment retaliation claim, an "ordinary citizen" plaintiff

---

[3] Plaintiff's objection to Hunt's statement that he discussed these issues with Falcon, who agreed, and that they had made the topic unavailable is overruled, as it is relevant to the issue of whether Falcon had a legitimate pedagogical reason to exclude the topic of abortion in speech class.

must show that (1) they were engaged in constitutionally protected activity, (2) the defendant's actions caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendant's adverse actions were substantially motivated against the plaintiff's exercise of constitutionally protected conduct. *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002). Not all retaliatory conduct tends to chill First Amendment activity, *DiMeglio v. Haines*, 45 F.3d 790, 806 (4th Cir. 1995), and a plaintiff seeking to recover for retaliation must show that the defendant's conduct resulted in something more than a "de minimis inconvenience" to her exercise of First Amendment rights, *ACLU of Md. v. Wicomico County, Md.*, 999 F.2d 780, 786 n.6 (4th Cir. 1995). "Certainly, some retaliatory actions-even if they actually have the effect of chilling the plaintiff's speech-are too trivial or minor to be actionable as a violation of the First Amendment." *Kennan*, 290 F.3d at 258. However, a plaintiff need not actually be deprived of her First Amendment rights in order to establish First Amendment retaliation. *Id.*

Defendant moves for summary judgment on Plaintiff's retaliation claim, arguing that Plaintiff has failed to raise a material fact issue on any of the elements. More specifically, Defendant argues that Plaintiff disregarded Falcon's instructions and instead "dictated what she wanted to discuss, as well as when and how," and that Falcon's criticisms and grade were based on the merits of the work rather than an improper retaliatory motive. Professor Hunt states that course grades in speech involve objective and subjective criteria. Hunt states that, in assigning grades to Plaintiff, ACCD did its best to give a fair grade, as well as constructive criticism to help students improve their skills. Hunt asserts that Plaintiff's grade was not a punishment, but to help her learn how to improve her skills so that she would make a better presentation in the future. Hunt further states that, after the conflict between Plaintiff and Falcon arose, it was decided that Hunt would grade Plaintiff's final

speech assignment in the class. Hunt asserts that Falcon's analogy of Plaintiff's speech style to that of a drill sergeant was appropriate (in fact noting that he considered it to be "tame" after hearing Plaintiff's speech) and helpful to explain how her presentation comes across and how it could be improved, and that this characterization was constructive criticism, not designed to undermine her credibility.

The Court finds that summary judgment on Plaintiff's retaliation claim is appropriate. Criticisms of one's speech/presentation is an expected part of a student's experience and evaluation in a speech class. Part of Falcon's job as an instructor was to criticize the students' performance in giving their speeches, and Falcon did so. Falcon's statements in evaluating Plaintiff's speech are part and parcel of the student experience, and fall into the category of "too trivial or minor to be actionable as a violation of the First Amendment." *Keenan*, 290 F.3d at 258. Isolated criticism in this context is insufficient to be actionable. *See Mosely v. Bd. of Educ. of City of Chicago*, 434 F.3d 527, 534 (7th Cir. 2006); *cf. McKee v. Hart*, 436 F.3d 165, 173 (3d Cir. 2006) ("[C]ourts have not found violations of employees' First Amendment rights 'where the employer's alleged retaliatory acts were criticism, false accusations, or verbal reprimands.'"); *Manna v. Township of Fairfield*, Civ. No. 04-CV-1430, 2007 WL 3231894 (D.N.J. Oct. 30, 2007) ("It is similarly clear that isolated or occasional admonishments, criticisms, false accusations, or verbal reprimands may not amount to retaliatory action sufficient to deter an ordinary person from exercising their free speech rights."). Thus, Plaintiff fails to show that Falcon's actions caused her to suffer an injury that would chill a person of ordinary firmness from continuing to engage in speech. Moreover, it is not the place of the federal courts to determine whether the grade awarded to Plaintiff was appropriate. Plaintiff had relief available through ACCD procedures, and in fact utilized such avenues of relief such that Hunt,

who had no reason to retaliate against Plaintiff, would determine Plaintiff's grade on the final speech. Accordingly, summary judgment on Plaintiff's retaliation claim is appropriate.

**Conclusion**

Defendant Charles Falcon's Motion for Summary Judgment (docket no. 44) is GRANTED. Plaintiff's remaining claims against Defendant Falcon are DISMISSED with prejudice. This Order disposes of all remaining claims, and the Clerk's office is directed to close this case.

It is so ORDERED.

SIGNED this 27th day of October, 2009.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE